UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRA MACHECHA, Individually and on behalf of all other persons similarly situated, | ECF CASE |
| Plaintiff, | No.: _____ |
| v. | CLASS AND COLLECTIVE ACTION COMPLAINT |
| RHM RESTAURANT CORP. d/b/a Rolfs and ROBERT H. MAISANO, Jointly and Severally, | JURY TRIAL DEMANDED |
| Defendants. | |

NATURE OF THE ACTION

1.      Plaintiff Alexandra Machecha worked as a server for Defendant RHM Restaurant Corp., d/b/a Rolfs and Robert H. Maisano (collectively, "Defendants") at their German restaurant from October 29, 2019 to January 13, 2020 and from November 3, 2021 to December 29, 2021.

2.      Plaintiff alleges on her behalf and other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay, (iii) failing to pay spread-of-hours pay, (iv) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, and (v) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

3.      Plaintiff alleges on her behalf and other similarly situated current and former employees of Defendants and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendants willfully violated

the FLSA by failing to pay overtime premium pay.

4.    Plaintiff asserts individual claims of gender discrimination, sexual harassment, hostile work environment and retaliation against Defendants under New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

5.    Plaintiff asserts individual claims of negligence, negligent hiring, retention and supervision, and negligent infliction of emotional distress under New York common law against Defendants.

<u>JURISDICTION AND VENUE</u>

6.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

7.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (2).

8.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>THE PARTIES</u>

9.    Plaintiff was, at all relevant times, an adult individual residing in Queens, New York.

10.    Upon information and belief, Defendant Rolfs is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

11.    Defendant Rolfs is, upon information and belief, an enterprise engaged in

commerce or in the production of goods for commerce. Defendant Rolfs is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, including food, glassware, computers and beverages.

12.     Defendant Robert H. Maisano, upon information and belief, owns, operates and controls Defendant Rolfs' day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees at all relevant times.

13.     Each Defendant, either directly or indirectly, has hired Plaintiff and other employees, fired other employees, controlled Plaintiff's work schedule and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

14.     At any given time, Defendants have and have had more than 11 employees.

<u>STATEMENT OF FACTS</u>

15.     Defendants operate and manage a German restaurant at 281 Third Avenue, New York, New York.

<u>Duties Performed</u>[1]

16.     Defendants employed Plaintiff as a server from October 29, 2019 to

---

[1] These subject lines are included only for organizational purposes.

January 13, 2020 and from November 3, 2021 to December 29, 2021.[2]

17.    As a server, Plaintiff was responsible for taking customers' orders and bringing food and beverages to them. Defendants, in addition, required her to spend approximately 1 hour a day performing side work, such as setting tables and getting the floor ready for service.

18.    During her employment with Defendants, at any given time, Plaintiff worked with at least 5 or 6 other servers and 4 or 5 bussers.

19.    Because of a high turnover at Defendants' restaurant, Plaintiff worked with at least 13 servers during both seasons.

20.    From personally observing and speaking with them, Plaintiff knows that her coworkers performed the same duties as her and were compensated in the same manner by Defendants. These coworkers include: Yana [last name unknown], Vlad [last name unknown],Yana [last name unknown], Gabriel [last name unknown], Steve [last name unknown], Justin [last name unknown], Viktoriya [last name unknown], Tamara [last name unknown], Justin [last name unknown], Aleksey [last name unknown] and Susana [last name unknown].

Defendants' Male Supervisory Staff

21.    Defendants' permanent staff consists of men from Bangladesh, including a manager Suhel [last name unknown], bartenders Aktar [last name unknown] and Hassan [last name unknown], and a head waiter Babul [last name unknown] ("permanent male staff"). The permanent male staff's duties included making employee schedules, assigning employees tables to service, keeping track and ordering inventory and

---

[2] The date ranges are estimates based on Plaintiff's memory.

supervising servers and other employees.

<u>Hours Worked</u>

22.    In 2019, Plaintiff worked 4 to 7 days a week, working from 11:00 a.m. until 10:00 p.m. to 12:00 a.m., averaging 12 hours per day and between 48 and 84 hours per week.

23.    In November 2021, Plaintiff worked 5 days a week, working from 11:00 a.m. until 10:00 p.m. to 12:00 a.m., averaging 12 hours per day and 60 hours per week.

24.    In December 2021, after she complained about being discriminated against, Defendants reduced Plaintiff's schedule from 5 days to 3 or 4 days per week.

25.    In December 2021, Plaintiff worked 3 to 4 days a week, working from 11:00 a.m. to between 10:00 p.m. to 12:00 a.m., averaging 12 hours per day and between 36 and 48 hours per week.

26.    Defendants did not provide Plaintiff and the other employees with a 30-minute uninterrupted break.

27.    Throughout her employment, Plaintiff and other similarly situated employees regularly worked more than 10 hours per day and more than 40 hours per week.

28.    From reviewing the schedule, speaking with them and personal observations, Plaintiff knows that other servers worked similar hours as she.

<u>Hourly Rate, Spread-of-Hours, Overtime</u>

29.    During the time period Defendants employed Plaintiff, the minimum wage under the New York Labor Law was $15.00 per hour.

30.    Defendants paid Plaintiff $10.00 per hour.

31.     In paying Plaintiff $10.00 per hour, Defendants were claiming a tip credit against the statutory minimum wage.

32.     While claiming a tip credit against the minimum wage, Defendants failed to inform, whether verbally or in written form, Plaintiff and the other servers that they were claiming a tip credit.

33.     Defendants failed to inform Plaintiff and the Class Action Members of the Labor Law's tip credit provisions, failing to give them the required notice; and (ii) Defendants failed to pay them for all hours worked in violation of the Labor Law.

34.     Defendants paid Plaintiff an hourly rate of $10.00 for the first 10 hours worked but failed to pay her *any* wages for *any* hours worked over 10 per day.

35.     Defendants did not pay Plaintiff for all of the overtime hours that she worked. For instance, when Plaintiff worked 5 days a week and 12 hours per day, totaling 60 hours per week, Defendants paid her for only 50 hours (10 hours per day x 5 days) per week. Defendants failed to pay her *any* wages for the hours she worked from 50 to 60.

36.     Plaintiff regularly worked more than 10 hours in a day, but Defendants did not pay her spread-of-hours pay: an extra hour at the minimum wage.

37.     Plaintiff has heard other servers complain that Defendants did not pay them for all hours worked and failed to pay them all of their overtime hours.

Labor Law Notice and Wage Statement Violations

38.     Defendants did not require Plaintiff and her coworkers to clock in or clock out. Defendants have no policy or practice of tracking the hours that Plaintiff and her coworkers worked.

39.     Plaintiff's paystubs did not correctly reflect all of the hours that she worked: they reflected a fiction that she worked exactly 10.0 hours per day, not accounting for *any* hours worked above that.

40.     Plaintiff knows that other servers complained that their paystubs did not accurately reflect all the hours they worked.

41.     Defendants did not provide Plaintiff or the other servers with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

42.     Defendants did not provide Plaintiff or the other servers with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment.

43.     Defendants did not post at the restaurant an up-to-date poster advising Plaintiff and other employees of their right to a minimum wage and overtime premium pay.

44.     From speaking with them, Plaintiff knows that other servers were, like she, not paid for all of their hours worked, were paid below the statutory minimum wage, were not paid overtime, were not given the required Labor Law notices, and were not paid spread-of-hours pay.

Gender Discrimination, Sexual Harassment, Hostile Work Environment

45.     During Plaintiff's employment, Defendants instigated, encouraged and condoned gender discrimination, sexual harassment and hostile work environment towards Plaintiff and other female employees at work on a daily basis.

46.     During Plaintiff's employment with Defendants, their permanent male staff regularly expressed their cultural views against women at work, including that

woman are subservient to men, that "their place is at home with children" and that "women should not work" and "do not need to make money," creating a discriminatory and hostile work environment for Plaintiff and Defendants' female employees.

47.    As a result of Defendants' permanent male staff's hostile views against women, they discriminated against Plaintiff and other female servers in several ways, including assigning her fewer and less quality tables, while assigning the male servers more tables with more customers. This practice resulted in in female servers earning less wages, tips and gratuities than their male co-workers.

48.    Defendants' permanent male staff verbally abused and yelled at Plaintiff and other female employees during their employment, publicly humiliating them and sometimes bringing them to tears in front of other staff and customers, while they treated men with respect and did not subject them to yelling.

49.    Plaintiff's co-workers witnessed most, if not all, of the harassment and discrimination described in this Complaint.

<u>Suhel's Hostile and Discriminatory Acts</u>

50.    During Plaintiff's employment, Suhel, a host in 2019 and a manager in 2021, regularly raised his voice at Plaintiff without any reason, often demeaning and swearing at her. For instance, even when the restaurant was half empty, Suhel criticized Plaintiff for allegedly not turning tables fast enough and threatening to send her home. He would also taunt her by saying that if he makes her cry at work, it is because she is a woman and cannot control her emotions.

51.    Suhel spoke respectfully and quietly to all the male servers and employees, even when they made mistakes at work. But women were not allowed this

professionalism but instead were constantly terrorized by him.

52.    In 2019 and 2021, Suhel regularly sexually harassed Plaintiff, giving her sexualized looks, scanning her body with his gaze and calling her "baby." Plaintiff was always visibly uncomfortable when Suhel sexually harassed her, which made him angry and yell at her.

53.    In 2019 and 2021, Plaintiff cried at work on numerous occasions after Suhel screamed at her in front of customers and her coworkers. When she spoke up to Suhel, he retaliated against her by reducing her work schedule, which, in turn, reduced her compensation.

54.    Suhel's discrimination and harassment was often witnessed by Defendant Maisano at the restaurant, but he failed to intervene, stop the discrimination and harassment or reprimand Suhel or any of the other male permanent staff, who also regularly harassed and discriminated against the female employees.

Aktar's Hostile and Discriminatory Acts

55.    In 2021, Yana, a female server, told Plaintiff that she had a disagreement with Aktar, a bartender. Aktar yelled loudly and used profanities against Yana. When Yana asked him why he treats her this way, Aktar replied that it was because you are a woman!.

56.    During Plaintiff's employment, Aktar sexually harassed her on a daily basis, including with sexual comments and unsolicited physical touching.

57.    During Plaintiff's employment, Aktar regularly approached her and touched her back, shoulders and thighs. Sometimes when Plaintiff stood near the computer, Aktar would approach her from the back and start tracing the outline of her bra

and its straps with his fingers through her clothes. Plaintiff told him to stop multiple times, but he attempted to touch her or her bra on a daily basis.

58.    Aktar regularly attempted to give Plaintiff a shoulder massage, despite her protests and asking him not to touch her.

59.    During her employment, Aktar would brag to Plaintiff and other female servers about his sexual abilities, telling them that he can have a lot of sex, multiple times per day and that he is very "strong" in bed. Plaintiff felt very uncomfortable and tried to change the subject every time, but he always persisted with his sexual harassment.

60.    In 2019, after repeatedly asking Aktar to stop sexually harassing her, Plaintiff had a verbal fight with him, telling him that he needs to stop "talking and thinking so much about her sexual life" and asking him to stop touching her and sexually harassing her at work.

61.    In 2021, Aktar asked Plaintiff if she likes to get massages. Plaintiff replied that she does. Aktar than asked Plaintiff if she prefers for the massage therapist to be a woman or a man, to which she replied that she was indifferent. Aktar than continued to sexualize the conversation by asking Plaintiff if "[she] like[s] it when a man touches [her]?" and "how do[es] she like to be touched by a man?" Plaintiff was very distraught and felt extremely uncomfortable for the remainder of the day at work.

62.    On November 26, 2021, Plaintiff stood by table number 8 and Aktar purposefully approached her and touched her breast with his arm.

63.    Oftentimes, when Plaintiff rebutted Aktar's relentless sexual advances, he would retaliate against her by not filling her drink orders or purposely delaying them to make her customers dissatisfied and to cause her distress.

64.    In December 2021, Aktar saw Plaintiff go inside the female bathroom and followed her. And even though Plaintiff locked the door behind her in the bathroom, Aktar tried to push the door in. Plaintiff was terrified and scared that he was going to sexually assault her. When she opened the bathroom door, she saw that the male bathroom was completely empty, confirming her fear that Aktar was trying to see her naked or sexually assault her in the bathroom. This incident made Plaintiff fearful of bodily harm, injury and sexual assault at work.

65.    Often when Plaintiff went to pick up drinks from Aktar at the bar, he would grab and touch her hands and arms, holding them tight in his hands and demonstrating to her with his face and moans that he enjoys the physical contact with her body.

66.    In November 2021, when Plaintiff would picking up drinks at the bar, Aktar would took her hands into his hands and announce to everyone around them that "this is one of my girlfriends," making Plaintiff uncomfortable and embarrassed.

67.    On December 11, 2021, as Aktar was passing by Plaintiff on his way to the bar, he purposefully stopped, touched her back with both of his hands and tried to find the edges of her bra under her shirt. Plaintiff told him to stop and he left disgruntled and angry.

68.    On December 13, 2021, Plaintiff had put nuts in her apron's pocket for a snack. Aktar, seeing this, approached her from the side, reached over her body with his arm and into her apron's pocket. With his hand in her apron, he heavily petted and groped her thigh while pretending to be searching for the nuts. Plaintiff told him to stop and get off of her, but he simply laughed it off continued to sexually harass her throughout the

day.

69.    On December 15, 2021, at 7:55 p.m., Plaintiff was standing near the bar with plenty of space around her, nevertheless, as Aktar was approaching the bar he made full physical contact with Plaintiff's entire body, pressing and rubbing against her for sexual pleasure.

70.    On December 29, 2021, at 4:50 p.m., Aktar tried to massage Plaintiff's shoulders. But she told him to stop. In response, Aktar told her that, if she lets him give her a massage, she can come to the back of the restaurant with him to give him a really "hard" and "deep" massage. When telling her this, Aktar emphasized and sexualized the words "hard" and "deep" with his mouth, eyes and tone of voice, making Plaintiff feel extremely uncomfortable and disgusted. In 2021, Plaintiff told several of her coworkers, including Vlad, Yana, Yana and Viktoriya, about the sexual harassment.

71.    Aktar's behavior made Plaintiff extremely uncomfortable and made her job difficult, as she felt an enormous amount of anxiety and fear every time she had to interact with Aktar because she knew he would take any opportunity to touch her or sexualize the work environment.

72.    Upon information and believe, Defendant Maisano may have witnessed Aktar's sexual harassment of Plaintiff multiple times through the restaurant's surveillance cameras but did nothing to stop it.

Hassan's Hostile and Discriminatory Acts

73.    During Plaintiff's employment, Hassan, a bartender, regularly sexually harassed and touched Plaintiff's shoulders and buttocks at work.

74.    Hassan touched Plaintiff's buttocks several times a week and sometimes

on a daily basis when passing by her near the bar or the computer. For instance, in November and December 2021, Hassan slapped Plaintiff's buttocks on multiple occasions when she was using the computer station at work to service a table.

75.    On December 11, 2021, between 4:00 to 6:00 p.m., Plaintiff was standing next to Yana, another female server, and Hassan slapped her buttocks. Plaintiff was shocked and told Yana, who saw Hassan slap her buttocks, how uncomfortable she felt, however, before she was able to finish telling her this, Hassan came back around and slapped her buttocks two more times. Plaintiff was so distressed and humiliated that she went to the bathroom and broke down crying.

76.    On December 15, 2021, at 2:55 p.m., when Plaintiff was standing by the bar, Hassan slapped her back and grazed and petted her buttocks with his hand.

Retaliation for Protected Activity Against Gender Discrimination and Sexual Harassment

77.    In September 2021, Defendant Maisano text messaged Plaintiff asking her if she was interested in returning to work at Defendants' restaurant. Defendant Maisano assured her that she would be working full time, working 6 days a week and sometimes 7 day and, as a result, that her earnings in wages and tips would be reliable and high.

78.    Plaintiff originally had reservations to return to work for Defendants because of the sexual harassment she experienced in 2019; however, because of Defendant Maisano's assurance that she would be regularly working 6 to 7 days a week, she decided to return to work for Defendants to earn a stable income.

79.    Plaintiff relied on Defendant Maisano's representations that she will be working 6 to 7 days per week at Defendants' restaurant, when she quit her existing job to work for Defendants starting in November 2021.

80.    In November 2021, when Plaintiff began her employment with Defendants, she was scheduled to work 5 days per week, not 6 or 7 as promised by Defendant Maisano.

81.    In early November 2021, because she was assigned only 5 days a week, Plaintiff asked Babul, head server who is responsible for scheduling servers' tables, why she is not being assigned to work 6 to 7 days a week, as Defendant Maisano promised her. She also asked him why she was getting fewer tables than the new male servers who have less experience than her and who have not previously worked for Defendants. In response, Babul told, "Because [she is] a woman and women do not need to have [their own] money."

82.    Plaintiff objected to Babu's discriminatory comment and asked him to give her the same amount of tables and days as male servers. In response, Babul continued asking her "but why do you need money? You are a woman," and continued to tell her that it is the duty of the man to earn money and women should not work or have their own money.

83.    Despite Plaintiff's complaints, Babul refused to give Plaintiff more tables because she was a woman and told her to speak to Defendant Maisano or Suhel about the number of days that she works.

84.    On November 29, 2021, Plaintiff text messaged Defendant Maisano asking him why she has less days than he originally promised her and whether she did something wrong at work. Defendant Maisano replied that he was happy with her work but failed to give her more days of work.

85.    In November 2021, Plaintiff complained to Defendants' permanent male

staff, including Aktar, Hassan, Suhel and Babul about their persistent and repeated sexual harassment, gender discrimination and hostile work environment and asked them to stop. In response, they retaliated against her by refusing to assist or cooperate with her during working hours and further cutting her schedule, making her work more difficult. In late November 2021, Suhel attempted to sexually harass and yell at Plaintiff at work, but she told him that she will not tolerate his discriminatory behavior towards her and other female staff and that he has to stop. Upon hearing this, Suhel was visibly enraged that Plaintiff, a woman, spoke against his discriminatory behavior. He also told Plaintiff that she should quit if "[she] can't take the pressure because it will not be the last time [he] yells at [her]."

86.    In late November 2021, Plaintiff spoke to Defendant Maisano about the days she wanted off in December 2021 to attend schedule. Once the schedule was done for December, Defendant Maisano showed it to Plaintiff and she saw that she was assigned to work 5 days per week.

87.    In the following week, when Plaintiff came to work, Babul told her that her schedule was changed by Defendant Maisano and Suhel and that she was only assigned to work 3 or 4 days a week.

88.    In late November 2021, Plaintiff addressed the cutting of her schedule with Suhel and he told her that Defendant Maisano cut her days. However, when she text messaged Defendant Maisano about the issue, he told her that it was Suhel who reduced her schedule. Defendant Maisano and Suhel ping-ponged Plaintiff between themselves a few more times, failing to take her seriously or address her concerns with her schedule, further discriminating against her because of her gender and retaliating against her for

complaining about the discrimination.

89.    In December 2021, Plaintiff was the only employee whose schedule was reduced and this was in retaliation for her complaining about Defendants' sexual harassment and discrimination of her.

90.    On December 8, 2021, when both Defendant Maisano and Suhel were working at the restaurant, Plaintiff asked them why she was the only employee whose schedule was reduced. In response, Defendant Maisano feigned a joke and told Suhel "why don't you tell her why we cut her days?" Suhel then falsely claimed that Plaintiff "threatened to quit the job and that he cut [her] hours because [she was] unreliable."

91.    Plaintiff immediately told Defendant Maisano that this was false, informing him that she never threatened to quit and, in fact, has been asking to work more days and hours, asking to be assigned 6 to 7 days per week, not less.  She also told Defendant Maisano that she asked Suhel not to treat her differently than the male employees, specifically she asked him to stop yelling and sexually harassing her, as he did in 2019.

92.    Upon hearing that Plaintiff engaged in protected activity, by telling Suhel not to yell at her and, therefore, not to treat her differently than men, Defendant Maisano got furious and told her that he "can't trust [her]." Meanwhile, Suhel denied discriminating against Plaintiff based on her gender and told her that she "had a problem with controlling her emotions" and "was just too sensitive and emotional," two very common phrases regularly used to gaslight women in the workplace by harassers.

93.    In retaliation for Plaintiff objecting to the unlawful discrimination and harassment during their December 8, 2021 conversation with Defendant Maisano and

Suhel, Defendant Maisano refused to directly communicate with Plaintiff; he would communicate with her through other members of the permanent male staff.

94.     In December 2021, Defendants did not increase Plaintiff's work schedule to 6 to 7 days per week.

95.     In further retaliation for her protected conduct, Babul purposely did not assign any patrons to her tables. He did this, for example, on December 17, 2021.

96.     In December 2021, Plaintiff also overheard Defendant Maisano make false comments about her to the other staff. For instance, on December 22, 2021, she heard Defendant Maisano and Suhel falsely state to the male staff that Plaintiff is never at the restaurant because she allegedly did not want to cover other server's schedules on her days off.

97.     Defendants' managers did not sexually harass their male employees, nor did they touch their male employees' buttocks, back, arms or hands and did not make sexual comments to them.

98.     Defendants' managers treated Plaintiff and their other female employees less well than their male employees.

99.     At all relevant times, upon information and belief, Defendants were aware of the repeated and continuous gender discrimination, hostile work environment and the sexual harassment at their workplace, but they permitted it to continue unremedied for so long as to amount to a discriminatory policy and practice.

100.     In late December 2021, Defendants failed to schedule Plaintiff for work in January 2022.

101.     December 29, 2021, was Plaintiff's last day of work with Defendants.

102.    Plaintiff was effectively constructively discharged as Defendants created a work atmosphere that is so hostile and intolerable, permeated with constant harassment and gender discrimination, that no reasonable person could withstand it and would also be forced to quit.

103.    As a result of Defendants' sexual harassment and discrimination of her, Plaintiff has suffered and continues to suffer, *inter alia*, lost wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

## CLASS ACTION ALLEGATIONS

104.    Plaintiff asserts these allegations and claims on her own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who were servers and other comparable tipped positions at any time since April 20, 2016 to the entry of judgment in this case (the "Class Period"), who were non-exempt employees under the New York Labor Law (the "Class Members").

105.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, more than 50 Class Members exist.

106.    Plaintiff's claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

107.    Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

108.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

109.    Plaintiff has the same interest in this matter as all other Class Members and her claims are typical of Class Members'.

110.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a.    Whether Defendants employed Plaintiff and the Class Members within the meaning of the Labor Law;

b.    What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

c.    Whether Defendants failed or refused to pay the Class Members overtime premium pay for all hours worked in excess of 40 hours per workweek;

d.    Whether Defendants failed or refused to pay the Class Members spread-of-hours pay for days when they worked in excess of 10 hours;

e.    Whether Defendants gave Plaintiff and the Class Members proper notice of the "tip credit" as 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 requires;

f.    Whether Defendants failed to provide Plaintiff and the Class Members Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1;

g.     Whether Defendants failed to provide Plaintiff and the Class Members wages statements under Labor Law § 195.3;

h.     Whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiff and the Class Members are employed;

i.     Whether Defendants are liable for all damages claimed hereunder, including interest, costs and disbursements and attorneys' fees; and

j.     Whether Defendants should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

111.     Under 29 U.S.C. § 206, Plaintiff seeks to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were servers and other comparable tipped positions with different titles at any time since April 20, 2019 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees under the FLSA (the "Collective Action Members").

112.     Plaintiff and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.     Defendants employed the Collective Action Members within the meaning of the FLSA;

b.     Collective Action Members performed similar duties;

c.     Defendants willfully or recklessly violated the FLSA;

      d.     Whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek, violating the FLSA and the regulations promulgated thereunder;

      e.     Defendants should be enjoined from such violations of the FLSA in the future; and

      f.     The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

<u>FIRST CAUSE OF ACTION</u>
FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA
(On Behalf of Plaintiff and the Class Members)

113.    Plaintiff realleges every preceding allegation as if set forth fully herein.

114.    Defendants were required to pay Plaintiff and the Collective Members no less than one and 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

115.    At all relevant times, Defendants had a policy and practice of not paying overtime at the applicable overtime rate to their employees for *all* of their hours worked in excess of 40 hours per workweek.

116.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

117.    Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff and the Collective Members' compensation.

118.    Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and

practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

119.    In failing to compensate Plaintiff and the Collective Members for all compensable hours worked, Defendants violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

<u>SECOND CAUSE OF ACTION</u>
FAILURE TO PAY THE MINIMUM WAGE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

120.    Plaintiff realleges every preceding allegation as if set forth fully herein.

121.    Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff and the Class Members.

122.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiff and the Class Members.

123.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members the statutory minimum wage.

124.    Defendants paid Plaintiff and the Class Members below the statutory minimum wage.

125.    Defendants were not eligible to take a tipped credit and pay Plaintiff and the Class Action Members below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because: (i) Defendants failed to inform Plaintiff and the Class Action Members of the Labor Law's tip credit provisions, failing to give them the required notice; and (ii) Defendants failed to pay them for all hours

worked in violation of the Labor Law.

126.    Defendants are accordingly liable to Plaintiff and the Class Action Members for the difference between the hourly rate at which they paid them and the statutory minimum wage.

127.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

128.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the minimum wage.

129.    Due to Defendants' Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PAY THE OVERTIME PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

130.    Plaintiff realleges every preceding allegation as if set forth fully herein.

131.    Defendants are employers under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff and the Class Members.

132.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff and the Class Members 1.5 times their regular rate of pay for all hours they worked in excess of 40.

133.    Defendants failed to pay Plaintiff and the Class Members the overtime

wages for all hours worked to which they were entitled, violating N.Y. Lab. Law § 650 and Part 142, § 142-2.2 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

134.    Under the Labor Law, when paying tipped employees for hours they worked over 40 in a week, an employer is required to multiply the regular rate of pay by 1.5 and then subtract the tip credit.

135.    Because Defendants are not permitted to claim a tip credit, they were required to pay Plaintiff and the Class Members at an overtime at a rate of the statutory minimum wage x 1.5.

136.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the correct amount of overtime wages.

137.    Due to Defendants' Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest. N.Y. Lab. Law § 663.

FOURTH CAUSE OF ACTION
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

138.    Plaintiff realleges every preceding allegation as if set forth fully herein.

139.    Defendants willfully failed to pay Plaintiff and the Class Members one additional hour's pay at the basic minimum wage rate before allowances for each day that their spread of hours exceeded ten hours, violating Part 146 § 146-1.6 of Title 12 of the

Official Compilation of Codes, Rules and Regulations.

140.    By their failure to pay Plaintiff and the Class Members spread-of-hours pay, Defendants have willfully violated the N.Y. Lab. Law Article 19, §§ 650, *et seq*. and the supporting New York State Department of Labor Regulations.

141.    Due to Defendants' Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

FIFTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

142.    Plaintiff realleges every preceding allegation as if set forth fully herein.

143.    Defendants willfully failed to supply Plaintiff and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1(a) within 10 business days of their first employment date.

144.    Due to Defendants' violations of N.Y. Lab. Law § 195.1, Plaintiff and the Class Members are entitled to recover from Defendants $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

SIXTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members)

145.    Plaintiff realleges every preceding allegation as if set forth fully herein.

146.    Defendants have willfully failed to supply Plaintiff and the Class Members

with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

147.    Due to Defendants' violations of Labor Law § 195.3, Plaintiff and the Class Members are entitled to recover from Defendants $100.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

<u>SEVENTH CAUSE OF ACTION</u>
GENDER DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Plaintiff)

148.    Plaintiff realleges every preceding allegation as if set forth fully herein.

149.    At all relevant times, Plaintiff was an "employee" and "person" and Defendants were "employer(s)" under the NYCHRL.

150.    Plaintiff was subject to gender discrimination and treated less well than her male colleagues because of her gender, violating N.Y.C. Admin. Code § 8-107(1)(a).

151.    Defendants' permanent male staff, including Aktar, Hassan, Babul and Suhel had the authority to affect Plaintiff's employment terms and conditions, including by firing and hiring her.

152.    Defendants are strictly liable for the actionable hostile and discriminatory environment created by their management, supervisors and employees who had immediate or successively higher authority over Plaintiff, including Aktar, Hassan, Babul and Suhel.

153.    Defendants knew or should have known of the constant and ongoing discrimination, including hostile work environment and the sexual harassment against Plaintiff, but failed to take any remedial steps for so long as to amount to a continuous

discriminatory policy and practice.

154.    As a result of Defendants' discrimination of her, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

155.    Defendants discriminated against Plaintiff with malice and reckless indifference to her rights under the NYCHRL.

156.    As a result of Defendants' unlawful conduct, Plaintiff can recover punitive damages. N.Y.C. Admin. Code § 8-502.

EIGHTH CAUSE OF ACTION
GENDER DISCRIMINATION
UNDER NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Plaintiff)

157.    Plaintiff realleges every preceding allegation as if set forth fully herein.

158.    At all relevant times, Plaintiff was an "employee" and "person" and Defendants were "employer(s)" under the NYSHRL.

159.    The NYSHRL prohibits employment discrimination based on gender. N.Y. Exec. Law § 296(1)(a).

160.    Plaintiff was subjected to unwelcomed sexual conduct, including sexual touching, in the workplace that constitutes sex-based discrimination.

161.    Defendants' workplace was permeated with discrimination that was sufficiently severe and pervasive to alter the conditions of Plaintiff's work environment and create an abusive working environment.

162.    Defendants are vicariously liable for the actionable discrimination committed by their management, supervisors and employees who had immediate or successively higher authority over Plaintiff, including Aktar, Hassan, Babul and Suhel.

163.    As a result of Defendants' harassment of her, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

NINTH CAUSE OF ACTION
HOSTILE WORK ENVIORNMENT
UNDER NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Plaintiff)

164.    Plaintiff realleges every preceding allegation as if set forth fully herein.

165.    Plaintiff was treated less well than her male because of her gender, violating N.Y. Exec. Law § 296(1)(a).

166.    Defendants' discriminatory acts and harassment that Plaintiff endured constitute a hostile work environment under NYSHRL.

167.    The discriminatory acts, harassment and hostile work environment that Plaintiff endured were a continuous series of related acts that were done by the same individuals and Defendants permitted to continue unremedied.

168.    Defendants violated the NYSHRL when they subjected Plaintiff to hostile work environment by harassing her and discriminated against her in terms, conditions and privileges of employment because of her gender.

169.    As a result of Defendants' subjecting her to the hostile work environment, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life.

TENTH CAUSE OF ACTION
HOSTILE WORK ENVIORNMENT
UNDER NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Plaintiff)

170.    Plaintiff realleges every preceding allegation as if set forth fully herein.

171.    Plaintiff was treated less well than other employees because of her gender, violating N.Y.C. Admin. Code § 8-107(1)(a).

172.    The discriminatory acts and harassment that Plaintiff endured constitute a hostile work environment under NYCHRL.

173.    As a result of Defendants subjecting her to the hostile work environment, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses.

174.    Defendants harassed and subjected Plaintiff to hostile work environment with malice and/or reckless indifference to his rights under the NYCHRL.

ELEVENTH CAUSE OF ACTION
RETALIATION
UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
(On Behalf of Plaintiff)

175.    Plaintiff realleges every preceding allegation as if set forth fully herein.

176.    Plaintiff complained to Defendants that she was being sexually harassed and discriminated against because of her gender.

177.    The NYSHRL prohibits gender discrimination and sexual harassment.

178.    Defendants retaliated against Plaintiff for her protected conduct, including reducing her work schedule, assigning her to less desirable table sections, refusing to communicate with her and refusing to assist her with her duties.

179.    Defendants retaliated against Plaintiff with respect to her employment terms, working conditions and privileges of employment, violating the New York State Human Rights Law, §§ 296 *et seq.* of the New York State Executive Law.

TWELFTH CAUSE OF ACTION
RETALIATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(On Behalf of Plaintiff)

180.    Plaintiff realleges every preceding allegation as if set forth fully herein.

181.    Plaintiff complained to Defendant that she was being sexually harassed and discriminated against because of her gender.

182.    The NYCHRL prohibits gender discrimination and sexual harassment.

183.    Defendants retaliated against Plaintiff for her protected conduct, including reducing her work schedule, assigning her to less desirable table sections, refusing to communicate with her and refusing to assist her with her duties.

184.    Defendant retaliated against Plaintiff with respect to her employment terms, working conditions and privileges of employment, violating the New York City Human Rights Law, §§ 8-101 *et seq.* of the New York City Administrative Code §§ 296 *et seq*.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her behalf and the Class and Collective Action Members, respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiff and her counsel to represent the Class Members;

b.      Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Collective Action Members and tolling of the statute of limitations;

c.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

d.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.      An award for unpaid overtime premium pay under the Labor Law and the FLSA;

f.      An award for unpaid minimum wage under the Labor Law;

g.      An award for unpaid spread-of-hours pay under the Labor Law;

h.      An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;

i.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

j.      An award of liquidated damages as a result of Defendants' Labor Law violations;

k.      An award of liquidated damages as a result of Defendants' willful FLSA violations;

l.      Equitably tolling the statute of limitations under the FLSA;

m.     An award to Plaintiff for back pay, front pay and all benefits along with pre and post judgment interest.

n.      An award to Plaintiff for punitive, liquidated and compensatory damages including damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination is repulsive to legislative enactments.

o.      An award of pre-judgment and post-judgment interest;

p.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions

of fact the Complaint raises.

Dated:  New York, New York
        April 21, 2022

LIPSKY LOWE LLP


<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com